**CUSTOM MUFFLER AND SHOCKS, INC., a Missouri Corporation, et al., Appellants,**

**v.**

**GORDON PARTNERSHIP, a Missouri Partnership, et al., Respondents.**

**Nos. WD 55946, WD 55959.**

Missouri Court of Appeals, Western District.

Aug. 10, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 5, 1999.

Application for Transfer Denied Nov. 23, 1999.

---

Dale C. Doerhoff, Matthew A. Clement, Jefferson City, for appellant.

Duane E. Schreimann, Christopher P. Rackers, Jefferson City, for respondent.

Before: HOWARD, P.J., and ULRICH and SMART, JJ.

VICTOR C. HOWARD, Judge.

Custom Muffler and Shocks, Inc. ("Custom Muffler") and Car Parts, Inc. ("Car Parts") brought an action for declaratory judgment, prescriptive easements, and a permanent injunction against Gordon Partnership, Daniel J. Gordon, and Darrel C. Gordon ("the Gordons") to resolve a property dispute. The trial court granted Custom Muffler a prescriptive easement, and all parties now appeal from the judgment.

Affirmed.

The dispute in this case involves a block of commercial real estate in downtown Jefferson City, Missouri. Custom Muffler and the building owned by the Gordons sit side-by-side on Missouri Boulevard between Beck Street and Conrad Street. Behind the two businesses is a vacant lot which spans the block. In 1981, when Custom Muffler purchased the property, the building now owned by the Gordons was occupied by a bowling alley which rented the building from the previous owner. The vacant lot behind both buildings was owned by the owners of the bowling alley property.

Custom Muffler, which occupies the corner of Missouri Boulevard and Conrad Street, has five service bays along Conrad Street, and an additional service bay ("the rear bay") on the side of the building facing the vacant lot. Since the early eighties, Custom Muffler used part of the vacant lot for parking and as space to maneuver vehicles in and out of the rear bay.

Custom Muffler was not alone in utilizing the vacant lot. Car Parts, which was located on the other side of Conrad Street, used the vacant lot to park their employees' cars since approximately 1982. In addition, to avoid the traffic on Missouri Boulevard, Car Parts' delivery drivers would cut through the vacant lot to travel between Conrad and Beck Streets as they delivered parts to customers. This was possible because of gaps in the curb that provided access to the vacant lot from both Conrad and Beck Streets. The delivery drivers followed a roughly straight path through the vacant lot, from the gap in the curb on Conrad Street to the gap in the curb on Beck Street. The owner of Car Parts testified that his delivery trucks used that route twenty to thirty times a day.

There was also evidence that members of the public used this path through the vacant lot. Howard Kunz, the forty-seven-year-old owner of Car Parts, testified that he grew up three blocks away and had observed cars and trucks using the lot as

an alley for as long as he could remember. Katherine Simmons, who lived on Conrad Street next to the vacant lot for forty-one years, testified that she had used the lot in this fashion the whole time she had lived there, and had observed other people doing the same "all the time" and at "any time of day." Marcella Haskamp, who lived on Beck Street next to the vacant lot, testified that she, too, used the lot in this fashion, and had observed other people doing so "all day long."

In 1997, the Gordons purchased the bowling alley property, and thus also became owners of the vacant lot. Subsequently, the Gordons erected a chain barrier behind and parallel to the rear of the Custom Muffler building to mark the boundary line of the vacant lot. The chain barrier was thirteen feet from the entrance to the rear bay, which made it impossible to maneuver vehicles in and out of the rear bay. The chain barrier also prevented Custom Muffler from parking vehicles behind its building. In addition, the Gordons erected barriers across the gaps in the curb on Conrad and Beck Streets, making it impossible for vehicles to cut across the vacant lot.

Custom Muffler and Car Parts filed a petition for a preliminary injunction prohibiting the Gordons from maintaining the chains and barricades which restricted Custom Muffler's space behind the rear bay and which prevented Custom Muffler's, Car Parts' and the public's use of the vacant lot. The petition also sought a permanent injunction and a declaration of the rights of the parties and the public to the vacant lot property.

Special Judge Jack O. Edwards granted Custom Muffler's request for a preliminary injunction, and enjoined the Gordons from maintaining any barrier within forty feet of the side of the Custom Muffler building which faced the vacant lot and which contained the rear bay. A trial then ensued on the issues of the permanent injunction and the declaration of the parties' rights. Circuit Judge Thomas J.

Brown, III found a prescriptive easement on behalf of Custom Muffler, and permanently enjoined the Gordons from maintaining any barrier within twenty, not forty, feet of the pertinent side of the Custom Muffler building. In so doing, the trial court determined that this amount of space was

> the minimum area this Court believes to be necessary to allow Custom Muffler & Shocks, Inc. and their employees and customers, to have access in and out of the back bay of the Custom Muffler building from the nearest public roadway, that being Conrad Street; to be able to drive out of the lane between the Custom Muffler & Shocks Building . . . and around the back of the Custom Muffler building for access to Conrad Street; and to continue the parking and storage usages at the back (north side) of the Custom Muffler & Shocks building that have been in existence for more than ten years and which have ripened into prescriptive rights.

The trial court also found that, although there was evidence of vehicular traffic across the path through the vacant lot between the gaps in the curbs, the court did not find the evidence sufficiently clear and convincing to justify recognition of a prescriptive easement there in favor of the public or either of the plaintiffs. All parties appeal from the judgment.

In their appeal, Custom Muffler and Car Parts claim that the trial court erred by failing to hold that a public or private trafficway was established by prescriptive easement across the vacant lot between Conrad and Beck Streets. They contend that there was clear and convincing evidence that the trafficway was used openly, adversely, and continuously for more than ten years.

 The trial court did not err by refusing to recognize a private trafficway across the vacant lot. The owner of Car Parts did testify that his vehicles used this route twenty to thirty times a day, but he also

stated that he thought the route was a public way. No claim of individual right of easement by prescription may arise under such circumstances. *Rosemann v. Adams,* 398 S.W.2d 855, 858 (Mo.1966).

We reach a similar conclusion with respect to the claim of a public trafficway. The law does not favor prescriptive easements, and so the requirements for their establishment must be proven by clear and convincing evidence. *Homan v. Hutchison,* 817 S.W.2d 944, 947–948 (Mo. App. W.D.1991). The trial court determined that the plaintiffs failed to meet that burden with respect to the route across the vacant lot. In reviewing a court-tried case to determine whether the court's judgment is grounded upon sufficient evidence, this court must act with caution and will reverse only upon a firm belief that the judgment is wrong. *In Interest of S.H.,* 915 S.W.2d 399, 401 (Mo.App. W.D. 1996). We cannot conclude that the trial court erred by refusing to recognize a public trafficway across the vacant lot.

In addition, Custom Muffler claims that the trial court erred by recognizing a prescriptive easement which extended only twenty feet from the property line between the rear bay and the vacant lot. Custom Muffler contends that an easement at least forty feet wide was required to continue the usages which had ripened into prescriptive rights.

At trial, the owner of Custom Muffler testified about his company's usage, during the prescriptive period, of the area behind the rear bay. He stated that, on the near side of the alley, Custom Muffler parked customer vehicles, and on the far side of the alley, they parked employee vehicles. The trial court granted Custom Muffler an easement which roughly encompassed Custom Muffler's prior usages of customer parking and getting in and out of the rear bay, but not the usage of parking for its own employees.

Custom Muffler argues that, once equitable jurisdiction was invoked, it was entitled to full and complete justice within the scope of the pleadings and the evidence. *Willman v. Beheler,* 499 S.W.2d 770, 778 (Mo.1973). The trial court determined that to award a prescriptive easement for ingress and egress and for customer parking, but not employee parking, was full and complete justice in this case, and we will not disturb that decision. Point denied.

In the first point of their cross-appeal, the Gordons claim that the trial court erred by recognizing the twenty-foot prescriptive easement in favor of Custom Muffler. They assert that, during the prescriptive period, the property in question was in the exclusive possession of an entity (the bowling alley) which was a tenant rather than the owner of the property. Therefore, the Gordons contend, any prescriptive rights established by Custom Muffler were acquired against the tenancy, and expired with the termination of the tenancy in 1994. At that point, the Gordons maintain, a new prescriptive period commenced against the owners of the property, and that ten-year period has not yet expired.

There are no Missouri cases which squarely address the issue of whether a prescriptive easement may be obtained against the owner of a property when the property in question is in the exclusive possession of a tenant. The only Missouri case cited by the Gordons is *Boyce v. Missouri Pac. R. Co.,* 168 Mo. 583, 68 S.W. 920 (Mo.1902), in which the appellant claimed that a prescriptive easement could not be obtained against a landlord under such circumstances. In *Boyce,* the Missouri Supreme Court stated that even if such a rule existed, it would not help the appellant because the appellant was actually in possession of the property at one point during the prescriptive period and still failed to timely assert her rights. 68 S.W. at 924. But the Court stressed that its consideration of the rule proposed by the appellant was only for the purpose of argument, and must not be construed as

the Court's recognition of such a rule. *Id.* The Court did not, as the Gordons claim, "recognize the validity" of such a rule.

■ If the landlord has a right of action against an adverse use and fails to exercise it, the doctrine of prescription is as applicable against the landlord as if he had an estate in possession. 25 Am Jur 2d, *Easements and Licenses,* § 47, p. 618 (citing *Aleotti v. Whitaker Bros. Business Machines,* 427 A.2d 919 (D.C.App.1981)). According to *Aleotti,* the policy behind such a rule is to promote vigilance by the landlord in overseeing the property, and to prevent tenants from carrying the burden of protecting the legal integrity of the property. 427 A.2d at 922–923.

In Missouri, § 527.150, RSMo 1994 authorizes any person claiming any interest in real property, including a reversionary interest, to bring an action to resolve conflicting claims to that property, even if that person is not in possession of the property in question. Pursuant to § 527.150, the owners of the bowling alley property, with a reversionary interest in the property, had a right of action against an adverse use, despite the fact that their tenants were in exclusive possession of the property, and therefore the period of prescriptive use could run against them. Point denied.

In the second point of their cross-appeal, the Gordons contend there was insufficient evidence that Custom Muffler adequately notified the previous owners of the property that its use of the space behind the rear bay, which they claim had begun as a permissive use, had at some point converted to an adverse use. Therefore, they conclude, the trial court erred by finding that said use had ripened into a prescriptive easement.

■ The party claiming a prescriptive easement enjoys a presumption that the use of the disputed property is adverse and under a claim of right when there has been a long and continuous use of that

property. *Gill Grain Co. v. Poos,* 707 S.W.2d 434, 437 (Mo.App. W.D.1986). This presumption casts the burden upon the landowner to show the use was permissive and not adverse. *Id.*

In the case at bar, the Gordons attempted to meet this burden with the testimony of three witnesses who described an agreement for the shared use of the two properties occupied by the bowling alley and Custom Muffler. Edgar Schenewerk, who leased the bowling alley property from the prior owners from 1974 to 1979, testified that he spoke with an employee of the occupant of the Custom Muffler property,[1] and gave that occupant permission to park vehicles on the vacant lot owned by the bowling alley. Schenewerk explained that bowling alley customers sometimes parked on the Custom Muffler property, and he felt he should "return the favor."

The Gordons also presented the testimony of Donnie Lowry, who worked as a manager at various Custom Muffler locations from 1975 to 1997, and David Scott, who was employed by the bowling alley from 1980 to 1994, first as assistant manager, and then as manager. Both men testified that Custom Muffler and the bowling alley had reached an agreement whereby Custom Muffler's employees could park on the bowling alley's lot during the day and the bowling alley's customers could park on Custom Muffler's property at night.

When Scott testified, the trial court asked him to identify what part of the vacant lot was covered by the agreement that Custom Muffler could park on the bowling alley's property. Scott identified an area that was not adjacent to the rear bay of the Custom Muffler building, where the court actually granted the ingress and egress easement to Custom Muffler. Instead, the area identified by Scott was on the far side of the alleged trafficway that cut through the block from the gap in the

---

1. There is conflicting testimony in the record as to whether Schenewerk was dealing with an employee of Custom Muffler or of Webster Oil, the previous occupant of the property.

curb on Conrad Street to the gap in the curb on Beck Street. Consequently, the trial court held that the Gordons had failed to show that the agreement covered the actual area of usage which was the basis for the easement awarded by the court.

On appeal of a court-tried case, we defer to the factual findings of the trial judge, who is in a superior position to assess credibility, *Lake Cable, Inc. v. Trittler*, 914 S.W.2d 431, 434 (Mo.App. E.D. 1996), and we consider the evidence in the light most favorable to the trial court's decision. *Marro v. Daniels*, 914 S.W.2d 16, 17 (Mo.App. E.D.1995). There was sufficient evidence for the trial court to conclude that the usage in question did not begin as a permissive use, and we defer to its finding.

In the third point of their cross-appeal, the Gordons claim that the trial court erred in overruling their request for a jury trial. They contend that they are entitled to a jury trial because the issues framed in the plaintiffs' petition are basically legal, rather than equitable, in nature.

There is no right to a trial by jury in a case in equity, and therefore the right to trial depends on whether the case is tried at law or in equity. *State ex rel. Willman v. Sloan*, 574 S.W.2d 421, 422 (Mo. banc 1978). Normally, whether an action is legal or equitable is determined by the nature of the relief sought. *Hammons v. Ehney*, 924 S.W.2d 843, 846 (Mo. banc 1996).

The Gordons acknowledge that the plaintiffs' petition in the case at bar sought equitable as well as legal relief. However, they argue that all of the equitable issues in the case were resolved once the plaintiffs were granted a preliminary injunction which ordered the Gordons to remove the barriers, leaving only the legal issues of resolving the easement claims. The Gordons' argument is not persuasive, as the plaintiffs still sought the equitable remedy of a permanent injunction if the easement claims were resolved in their favor, and because once a court of equity asserts its jurisdiction, it will retain jurisdiction until it decides all of the issues adequately and fairly between the parties. *Estate of Dean*, 967 S.W.2d 219, 223–224 (Mo.App. W.D.1998). Point denied.

The judgment of the trial court is affirmed.

All concur.