**CITY OF GREENWOOD, Missouri, Respondent,**

v.

**MARTIN MARIETTA MATERIALS, INC., and Hunt Martin Materials, LLC, Appellants.**

**No. WD 70495.**

Missouri Court of Appeals,
Western District.

Feb. 9, 2010.

As Modified March 30, 2010.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 30, 2010.

Application for Transfer Denied
May 25, 2010.

Edward D. Robertson, Jr., Mary D. Winter, and Anthony L. DeWitt, Jefferson City, MO, Brian J. Madden, R.B. Miller, III, and R. Kent Sellers, Kansas City, MO, H. Waynes Phears, Atlanta, GA, for Appellants.

Steven E. Mauer and Heather S. Esau Zerger, Kansas City, MO, Brian C. Walsh, St. Louis, MO, for Respondent.

Before Division III: JAMES EDWARD WELSH, Presiding Judge, and MARK D. PFEIFFER and KAREN KING MITCHELL, Judges.

KAREN KING MITCHELL, Judge.

This is an appeal from a judgment of the Circuit Court of Jackson County, Missouri ("trial court"), granting a permanent injunction to the City of Greenwood, Missouri ("Greenwood"), prohibiting trucks transporting rock from a quarry run by Appellants Martin Marietta Materials and Hunt Martin Materials (collectively, "Quarry")[1] from using a particular road

---

1. Appellants are Martin Marietta Materials, Inc., a world-wide operator of quarries, and Hunt Martin Materials, LLC, a company formed in 1995 by Martin Marietta and Hunt Midwest Mining. Appellants each own fifty percent of the Greenwood quarry. The par-

route through Greenwood to Missouri Highway 150. We reverse the judgment of the trial court.

### Factual and Procedural Background[2]

Greenwood is a fourth-class city of approximately 4,000 residents located in southern Jackson County, Missouri. Quarry has been in operation just south of Greenwood for more than fifty years. There are two routes available for trucks transporting rock from Quarry to Highway 150, the main east-west route in the area. The route in dispute in this case runs from 150 Highway south along Second Avenue and a few other side streets to Quarry. This route, known as the Second–Avenue route, is a narrow country road that passes through a residential area and a commercial area on the eastern edge of Greenwood. Prior to June of 2006, Greenwood designated Second Avenue as its only permitted truck route.

In June of 2006, due to concern over high-volume truck traffic, Greenwood enacted an ordinance that limited the weight of trucks that could use Second Avenue. On January 26, 2007, the ordinance was declared to be inconsistent with Missouri law and thus invalid by the United States District Court for the Western District of Missouri ("federal court").[3] *Martin Marietta Materials, Inc. v. City of Greenwood,* No. 06–0697–CV–W–DW, 2007 WL 5193731 (W.D.Mo. Jan. 26, 2007).

In February of 2007, Greenwood passed another ordinance that prohibited all commercial vehicles from using Greenwood streets unless a street had been designated a "Commercial Use Route" ("new ordinance"). At that point, no Greenwood street was designated as a Commercial Use Route. Quarry brought an action in federal court seeking to enjoin enforcement of the new ordinance alleging that Greenwood, in enacting the ordinance, breached a 1991 contract between Quarry and Greenwood and violated the Commerce Clause of the United States Constitution.

Greenwood brought its own action in the Circuit Court of Jackson County for declaratory judgment, seeking a declaration that the new ordinance was valid under Missouri law. Quarry removed Greenwood's state case to federal court, but it was remanded because the federal court found that, while asserting a defense to a federal action in a parallel state court case normally supports removal, a simple declaratory judgment action brought by a state entity to uphold the state constitutionality of its actions is not within the federal question jurisdiction of the federal court. Thus, based on the limited relief sought in the initial petition, the federal court remanded this case to the state court. *City of Greenwood v. Martin Marietta Materials, Inc.,* 2007 WL 1859192 (W.D.Mo. June 26, 2007).

Greenwood subsequently amended its state court pleading to add two counts for public nuisance (based on the high volume of truck traffic on Second Avenue); a count for trespass; and a count for negligence (based on Quarry's prior attempts to

---

ticular ownership specifics are not important on appeal. Therefore, we will simply refer to Appellants as "Quarry."

**2.** The evidence is considered in a light most favorable to the decision of the trial court. *Edmunds v. Sigma Chapter of Alpha Kappa Lambda Fraternity, Inc.,* 87 S.W.3d 21, 23 (Mo.App. W.D.2002).

**3.** Litigation regarding the Quarry's use of Greenwood streets proceeded simultaneously in state and federal court. Because the issues in these cases are intertwined, in addressing the procedural background of this case, we will also address the collateral federal litigation.

repair Second Avenue). Greenwood's petition asked for money damages and punitive damages in addition to the declaratory judgment sought in count I. Nowhere in the petition did Greenwood request injunctive relief. Greenwood also did not allege irreparable harm or inadequate legal remedies. The petition did include a general prayer for such other relief as the court deemed just and proper.

On June 26, 2007, the federal court granted Quarry a preliminary injunction against enforcement of the new ordinance on the grounds that it violated the Commerce Clause of the United States Constitution. Quarry trucks began using Second Avenue again on July 1, 2007.

On March 5, 2008, a jury trial commenced in state court on Greenwood's negligent repair, nuisance, and trespass claims. On March 14, 2008, the jury returned verdicts for Greenwood for $1.9 million in compensatory damages and $10 million in punitive damages on the claims of negligent repair and public nuisance. The jury found for Quarry on the trespass claim. The trial court entered judgment on counts II through V on March 17, 2008, in accordance with the jury verdicts. Quarry filed motions for judgment notwithstanding the verdict or for new trial, which were denied in two documents also denominated as judgments on May 6, 2008. On May 16, 2008, Quarry filed a notice of appeal of the May 6 judgment.

Meanwhile, on April 1, 2008, Greenwood filed a motion for a permanent injunction in the state case, asking the trial court to prohibit Quarry truck traffic on Second Avenue.

On June 13, 2008, count I (seeking declaratory judgment) was tried to the court, and on June 16, 2008, the trial court entered a judgment declaring that Green-

wood's revised quarry ordinance was valid under Missouri law. On June 30, 2008, Quarry filed a notice of appeal of the trial court's declaratory judgment on count I and all documents the trial court had denominated as judgments.[4]

A hearing on Greenwood's motion for injunctive relief was initially set for July 11, 2008. Before the hearing, Greenwood sought clarification from the federal court of whether the previously granted federal preliminary injunction preventing enforcement of the new ordinance prohibited Greenwood from seeking a state court injunction regarding the same ordinance. The federal court refused to grant Greenwood an "advisory opinion" on whether proceeding with the state court injunction action would place Greenwood in contempt of the previous federal order.

In its order, the federal court indicated that it was "disturbed by the state of affairs in this dispute and increasingly frustrated by the conduct of [Greenwood]." *Martin Marietta Materials, Inc. v. City of Greenwood,* No. 06–0697–CV–W–DW, 2008 WL 2700062, at *1 (W.D.Mo. July 10, 2008). Responding to Greenwood's assertion that there was a "rift" between the federal and state court, the federal court held Greenwood responsible for "splitting this cause of action and arguing inconsistent positions before each court." *Id.* The federal court intimated that had Greenwood's injunctive claim been pleaded earlier, the case would have proceeded differently.

Although this court had an opportunity to consolidate these cases when the state court action was removed, remand was required based on the record before it at the time of removal. The Court is of the opinion that if all issues and claims had been honestly presented during the ear-

---

4. The appeals were consolidated by this court and were affirmed on August 11, 2009.

ly phases of this dispute, either here or in state court, the present predicament would have been avoided.

*Id.* The July 11 hearing in state court was continued.

On September 3, 2008, while the appeal of the state court action was pending in this court, the trial court held a status conference. At that time, Greenwood still wanted the trial court to rule on its motion for injunctive relief filed April 1, 2008. Quarry argued at the status conference that the trial court no longer had jurisdiction to offer any further relief, as judgment had been entered on each count in the amended petition and the matter was pending on appeal. In response to Quarry's concerns, the trial court recommended that Greenwood file a new petition seeking injunctive relief. Greenwood did so on September 4, 2008. On the same day, the federal court entered a permanent injunction barring Greenwood from taking any action that prohibits all through truck traffic through the city. *Martin Marietta Materials, Inc. v. City of Greenwood,* No. 06–697–CV–W–DW, 2008 WL 4832638, at *8 (W.D.Mo. Sept. 4, 2008).

On September 23, 2008, Quarry removed the newly filed state injunctive action to federal court. The next day, Greenwood voluntarily dismissed that action and filed a notice of hearing on its April 1, 2008 motion for injunctive relief under the number of the state-court case pending appeal. The state trial court held a hearing on Greenwood's motion for injunction on November 12, 2008. Quarry again objected to the trial court's jurisdiction to decide

the matter since the case was pending on appeal. On November 17, 2008, 154 days after entering judgment on the last pleaded count in Greenwood's petition, the trial court entered judgment giving Greenwood an injunction prohibiting quarry trucks, and only quarry trucks, from using Second Avenue. This appeal follows.

### Standard of Review

██ An action seeking injunction is an action in equity. The standard of review in a court-tried equity action is the same as for any court-tried case; the trial court's judgment will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

██ To the extent that a trial court's grant of injunctive relief involves weighing the evidence presented, determining the credibility of witnesses, and formulating an injunction of the appropriate scope, this court reviews for abuse of discretion. *Doe v. Phillips,* 259 S.W.3d 34, 37 (Mo.App. W.D.2008). Questions of law, however, are reviewed de novo, and no deference is given to the trial court. *In re Smythe v. Funk,* 254 S.W.3d 895, 897 (Mo.App. S.D. 2008).

### Legal Analysis

**A. Sufficiency of the claim for injunctive relief**

██ Quarry's first points on appeal[5] are that the trial court erred in granting

---

**5.** Quarry asserts as point I on appeal that the trial court lacked authority to grant injunctive relief because Greenwood did not file a petition for injunction that pleaded facts supporting injunctive relief nor did it pray for injunctive relief. Point II was that Greenwood's prayer for "such other relief as may be deemed by this court to be just and appropriate" is insufficient to properly plead injunctive relief. Point IV is that Greenwood failed to allege irreparable harm as is required for an award of injunctive relief. Because all three of these points deal with the sufficiency

Greenwood's request for injunctive relief because Greenwood did not affirmatively ask for injunctive relief or plead factual issues that would support injunctive relief in its amended petition. It is well established that the "powers of a court of equity to adjudicate are broad but are limited to the *claim for relief and issues* made by the pleadings." *Blando v. Reid,* 886 S.W.2d 60, 67 (Mo.App. W.D.1994) (emphasis added). "To the extent that [a] judgment goes beyond the pleadings, it is void." *Residential & Resort Assocs., Inc. v. Wolfe,* 274 S.W.3d 566, 569 (Mo.App. W.D.2009). Therefore, a trial court has the authority to grant relief only if: (1) the relief is requested, and (2) issues are raised that support the granting of such relief. In this case the trial court exceeded its authority in considering Greenwood's motion for injunctive relief.

### i. The relief sought

■ Quarry claims that Greenwood's prayer for relief, which does not specifically request an injunction but does generally request other relief that is "just and proper" is insufficient to support the trial court's grant of injunctive relief. As Greenwood notes, this court has stated that a general prayer for relief, such as Greenwood's request for "such other relief this court deems just and proper," is elastic enough to encompass other equitable relief, including an injunction. *See City of Kansas City v. Mary Don Co.,* 606 S.W.2d 411, 414 (Mo.App. W.D.1980). However, courts rarely grant injunctive relief based solely upon a general prayer. In *Blando* we stated that the "just and proper" language "is more than mere *custom*" and may allow an equity court "to enter relief required to resolve the issues raised by the allegations in the cause pleaded." 886 S.W.2d at 67. But we went on to say that such general language is "not a panacea for unpleaded causes of action" and reversed the trial court's order of partition and sale in an equitable suit to rescind a warranty deed. *Id.* In this case, Greenwood never sought to amend its petition to add a prayer for injunctive relief, choosing to stand solely on its general prayer.[6] We need not address directly whether Greenwood's general prayer is elastic enough to encompass an injunction because the trial court's award of injunctive relief fails for other reasons, as detailed below.

### ii. Facts pleaded or tried by consent

■ Generally, the prayer for relief is not considered part of the petition. *City of Kansas City v. N.Y.–Kan. Bldg. Assocs., L.P.,* 96 S.W.3d 846, 853 (Mo.App. W.D. 2002). "This rule is particularly applicable to equitable proceedings." *Id.* Thus, granting relief not specifically prayed for in the pleadings is appropriate only if it resolves "issues raised by the allegations in the cause pleaded." *Blando,* 886 S.W.2d at 67. Courts are restrained from deciding an *unpleaded* factual issue. *Colbert v. State, Family Support Div.,* 264 S.W.3d 699, 702 (Mo.App. W.D.2008) (in case addressing the propriety of the division intercepting father's tax return to pay child support debt, trial court exceeded its authority in ordering that the father's child support arrearage was satisfied when the father did not pray for such relief *nor put on evidence that the debt was satisfied*). The relief granted must be "fully supported by facts which were either pleaded or tried by consent." *Feinberg v. Feinberg,* 924 S.W.2d 328, 330 (Mo.App. E.D.

---

of Greenwood's claim for injunctive relief, they will be addressed together.

**6.** Quarry argues that this was a calculated move on Greenwood's part to avoid removal to the federal court.

1996). Quarry contends that not all facts necessary to prove the elements of an injunction were pleaded or tried by consent. We agree.

■ Greenwood maintains that the grant of an injunction in this case is supported by facts pleaded and tried to establish its public nuisance claim. However, a party cannot plead an action in law and recover in equity. *Carlton v. Wilson,* 618 S.W.2d 731, 732 (Mo.App. S.D.1981). Because Greenwood's public nuisance claim was a claim at law, Greenwood cannot rely on the pleading of the facts supporting the public nuisance claim to also support its motion for injunction, an equitable remedy supposedly justified by the fact that the count for declaratory judgment (its only equitable claim) was still pending at the trial court when Greenwood moved for injunctive relief.

■ Even if Greenwood's cause of action for public nuisance could support the grant of injunctive relief, each element of a claim for injunctive relief must be supported by facts that were either pleaded or tried by consent. The elements of a claim for permanent injunction include: (1) irreparable harm, and (2) lack of adequate remedy at law. *N.Y.–Kan. Bldg. Assocs., L.P.,* 96 S.W.3d at 855. Greenwood's amended petition does not allege irreparable harm.[7] In addition, Greenwood acknowledges that it could not have raised irreparable harm in its petition because it did not know that the award of damages would not stop Quarry from using Second Avenue. Therefore, the only question is whether the issue of irreparable harm was tried by express or implied consent.

■ In this case there is no question that the issue of irreparable harm was not tried by *express* consent. Quarry objected to the injection into this case of issues pertaining to injunctive relief at every step of the way. Nor can the presentation of evidence in support of Greenwood's public nuisance claim be the basis for a finding of *implied* consent to the litigation of irreparable harm. Application of the implied consent rule is limited to when the evidence bears *only* on the unpleaded issue and not upon issues already in the case. *Residential & Resort Assocs., Inc.,* 274 S.W.3d at 569; Rule 55.33(b). Assuming, *arguendo,* that Greenwood's evidence of public nuisance proved each of the elements required for grant of an injunction, that evidence was admitted for purposes of proving public nuisance and cannot be the basis for a finding of implied consent to trial of the injunction issues including irreparable harm.

■ We also find that the evidence presented in support of Greenwood's public nuisance claim is insufficient to support the grant of injunctive relief because it does not demonstrate that Greenwood had no adequate remedy at law. *N.Y.–Kan. Bldg. Assocs., L.P.,* 96 S.W.3d at 855.

An injunction is an extraordinary and harsh remedy and should not be granted when there is an adequate remedy at law. Generally, the phrase 'adequate remedy at law' means that damages will not adequately compensate the plaintiff

---

**7.** Greenwood asserts that Quarry did not preserve its point that Greenwood failed to allege irreparable harm. We disagree. Quarry did object at trial that Greenwood had not pled for an injunction, and Greewood insisted that it was not seeking injunction at that time. Quarry objected to the trial court taking up the motion for injunctive relief after all counts of the petition had been decided and were on appeal. When the trial court elected to address the motion for injunction at a separate hearing, despite Quarry's numerous objections, Quarry argued in closing that Greenwood had not proven irreparable harm. We find this sufficient to preserve the issue for appeal.

for the injury or threatened injury. Irreparable harm can be found when pecuniary remedies fail to provide adequate reimbursement for improper behavior. *Id.* (internal citations omitted). In this case, the jury awarded Greenwood $1.9 million in compensatory damages and $10 million in punitive damages. At trial Greenwood argued that the abatement of the nuisance would be a new road for Second Avenue.[8] A new road would presumably alleviate the traffic and safety concerns which currently exist because of the road's narrow width and poor condition. Greenwood did not even attempt to complete the abatement it sought and received from the jury before it sought injunctive relief from the court. Greenwood's monetary compensatory damage award and punitive damage award indicate that an adequate legal remedy exists. Accordingly, Greenwood neither pleaded nor tried the issues of irreparable harm and inadequate remedy at law and, therefore, injunctive relief at the time it was entered by the trial court was not proper.

## B. The trial court's jurisdiction to address Greenwood's motion for permanent injunction

 Quarry's next point on appeal is that the trial court was without jurisdiction to grant the motion for injunctive relief because final judgment on all counts had been entered and the appeal was pending before this court when the judgment granting injunction was entered. Historically, it has been said that a trial court loses jurisdiction to take any further action in a case when the judgment becomes final. *State ex rel. Wolfner v. Dalton,* 955 S.W.2d 928, 930 (Mo. banc 1997); Rule 75.01. If a proper post-trial motion were filed, the trial court's jurisdiction would be said to extend until the court ruled on the post-trial motions, or until ninety days after the entry of judgment, at which time the post-trial motions would be deemed denied. *State ex rel. Eddy v. Rolf,* 145 S.W.3d 429, 432 (Mo.App. W.D.2004); Rule 81.05. The only motions that could extend the trial court's jurisdiction beyond thirty days were motions: to dismiss without prejudice after the introduction of evidence is commenced; for directed verdict; for judgment notwithstanding the verdict; to amend the judgment; for relief from judgment or order; or for new trial. *Eddy,* 145 S.W.3d at 433 n. 2.

Similarly, it was said that "an appeal cuts off trial court jurisdiction to exercise any judicial function in the case and vests jurisdiction in the appellate court." *Top Craft, Inc. v. Int'l Collection Servs.,* 258 S.W.3d 488, 490 (Mo.App. S.D.2008). In this case, both the time limits under Rules 75 and 81 had expired and the appellate court had assumed jurisdiction, so it would have been easily concluded that the trial court did not have jurisdiction to enter injunctive relief in the case.

However, in January of 2009, the Missouri Supreme Court decided *Webb v. Wyciskalla,* 275 S.W.3d 249 (Mo. banc 2009). *Webb,* citing other recent Missouri Supreme Court cases, stressed that there are really only two forms of jurisdiction: personal jurisdiction and subject-matter jurisdiction. *Id.* at 252. *Webb* holds that, if a trial court errs and a statutory or procedural requirement is not met, the trial court does not "lose" jurisdiction but has simply erred, and the appellate court must determine whether waiver of the statutory or procedural safeguard applies and, if not, whether the error is prejudicial to the aggrieved party. *Id.* at 254. Greenwood seems to argue that *Webb* somehow ren-

---

8. Although the witness for Greenwood mentioned the "new road," it appears that Greenwood intended only to repair and expand the existing road.

ders all established procedural law merely advisory and not mandatory, and that the trial court could, therefore, enter additional relief well after it would ordinarily have "lost" jurisdiction.

We find that Greenwood misapplies *Webb*. *Webb* and its contemporaries[9] all deal with the trial court's *original* jurisdiction. They do not deal with appellate jurisdiction and whether a trial court and appellate court can have concurrent jurisdiction over the same case. In this case, the appeal of the trial court's judgment, in which Greenwood acquiesced, was already pending in this court when the trial court purported to enter additional relief in the form of an injunction. Greenwood does not challenge this court's authority over the first appeal. We do not find, as Greenwood evidently argues, that *Webb* supersedes the long-standing rule against simultaneous trial and appellate court jurisdiction, which takes its authority directly from the Missouri Constitution. Rather, the appellate court's assumption of appellate jurisdiction removes the trial court's jurisdiction over the subject matter of the case. *See* Mo. Const. art. V, §§ 3 and 14.[10] At some point a judgment must become final. At that point the trial court's ability to act ceases and the appellate court's ability to review commences. If that were not the case, continuing activity in a case appealed would make it unreviewable.

We find that the trial court's jurisdiction ceased even though Greenwood's motion for injunctive relief was filed while Green-

wood's equitable claim for declaratory judgment was still pending. In arguing that the trial court retained jurisdiction, Greenwood relies on *Custom Muffler & Shocks, Inc. v. Gordon Partnership*, 3 S.W.3d 811, 817 (Mo.App. W.D.1999), which states that "once a court of equity asserts its jurisdiction, it will retain jurisdiction until it decides all of the issues adequately and fairly between the parties." Greenwood's reliance on *Custom Muffler* is misplaced. As discussed in detail above, Greenwood's claim for injunctive relief was never properly before the trial court. Therefore, unlike in *Custom Muffler*, in this case the only equitable issue "adequately and fairly" between the parties was Greenwood's request for declaratory judgment, which was resolved months before the trial court heard evidence on and granted Greenwood's motion for permanent injunction. *Id.* As noted above, even if Greenwood were correct that once an equitable court assumes jurisdiction it may resolve all issues between the parties in order to achieve complete justice, the court must resolve the ancillary issues at the same time that it resolves the pleaded equitable claims.

Further, *Custom Muffler* is distinguishable because a pleaded equitable issue remained before the court throughout that litigation. In *Custom Muffler*, the plaintiffs brought an action seeking both a preliminary and permanent injunction prohibiting the barricading of a parking lot (equitable relief) and a prescriptive easement (legal relief). The trial court entered a preliminary injunction and then tried the issues of

---

**9.** *See In re Marriage of Hendrix*, 183 S.W.3d 582 (Mo. banc 2006); *State ex rel. State v. Parkinson*, 280 S.W.3d 70 (Mo. banc 2009).

**10.** Article V, section 5 gives the Supreme Court the power to "establish rules relating to practice, procedure and pleading for all courts and administrative tribunals, which shall have the force and effect of law." Supreme Court rules delineating the procedure for when and how trial court jurisdiction ends and appellate jurisdiction begins do not violate the Constitution or run afoul of the Supreme Court's holding in *Webb*. *See Webb*, 275 S.W.3d at 254.

permanent injunction and prescriptive easement. In arguing that the trial court erred in denying them a jury trial, the defendants claimed that if the legal (easement) claims were resolved in the plaintiffs' favor, the permanent injunction would not be necessary. *Id.* Thus, defendants claimed the grant of the preliminary injunction resolved the only equitable issue in the case and equitable jurisdiction ceased at that point. The trial court disagreed, finding that the plaintiffs still sought the equitable remedy of a permanent injunction. *Id.* Unlike *Custom Muffler*, in this case the trial court resolved the only equitable issue pleaded when it granted Greenwood's request for declaratory judgment because, as stated above, the issues and facts supporting injunctive relief were not pleaded or tried by express or implied consent. Further, there was no issue of appellate jurisdiction in *Custom Muffler.* Therefore, the case does not support Greenwood's position.

### Conclusion

Because we find that the trial court's judgment granting injunctive relief was in error, we reverse the November 17, 2008 judgment of the trial court. Thus we need not decide Quarry's other remaining points on appeal.[11] Of course, if Second Avenue is properly repaired and the quarry traffic continues to be a nuisance, Greenwood is welcome to seek injunctive relief at a later date. However, if Greenwood files a new petition in the state trial court, the court should consider thoroughly all previous rulings in state and federal court actions between these parties reflecting on the propriety of injunctive relief prohibiting through trucks in Greenwood, and careful-

11. The above analysis addresses Quarry's first four points on appeal. Its final two points are that the trial court's grant of injunctive relief was erroneous in that it did not balance all applicable factors to find the least restric-

ly balance the interests of the parties in fashioning any injunctive relief it deems appropriate.

JAMES EDWARD WELSH, Presiding Judge, and MARK D. PFEIFFER, Judge, concur.

tive means of abatement of the public nuisance and that it violated the terms of the Commerce Clause of the United States Constitution as found by the federal court.